# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

JAKIUL ALAM,

Case No. 21-CV-755 (NEB/JFD)

           Plaintiff,

v.

UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, LESLIE TRITTEN, and UR M. JADDOU,[1]

           Defendants.

ORDER ON
MOTION TO DISMISS

Under 8 U.S.C. Section 1440 of the Immigration and Nationality Act ("INA"), to obtain citizenship, a soldier applying for naturalization must have been "separated under honorable conditions" as characterized by the military. When a soldier is discharged while in entry-level status, the military does not characterize his discharge type, instead issuing an "uncharacterized" discharge. The interaction between Section 1440's requirement that a separation be "under honorable conditions" and the military policy of issuing "uncharacterized" discharges creates problems for applicants to the Military Accessions Vital to the National Interest program ("MAVNI"). In other contexts, the military treats an "uncharacterized" discharge as "under honorable conditions." But

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Ur M. Jaddou is substituted for Tracy Renaud.

USCIS, the agency granting citizenship, does not. Instead, it treats an "uncharacterized" discharge as a neutral third category, which is neither "under honorable conditions" nor "under other than honorable conditions."

Plaintiff Jakiul Alam challenges the USCIS policy of departing from the military's treatment of an "uncharacterized" discharge. Alam enlisted in the United States Army through MAVNI—a program to provide an expedited path to citizenship for immigrant soldiers with specialized skills. The Army discharged Alam from service for medical reasons and gave him an "uncharacterized" discharge. USCIS denied Alam's citizenship application under its policy that an "uncharacterized" discharge is not "under honorable conditions."

Alam argues that an "uncharacterized" discharge is a discharge "under honorable conditions" because (1) the plain language of Section 1440 contemplates only two categories of discharge: "under honorable conditions," and "under other than honorable conditions"; and (2) USCIS must consider military instructions when interpreting the meaning of "uncharacterized." Defendants[2] move to dismiss because they believe Section 1440 permits a third category of "uncharacterized" discharge, which is neither "under

---

[2] Defendants are the United States Citizenship and Immigration Services ("USCIS"), Ur M. Jaddou in her official capacity as Director of USCIS, and Leslie D. Tritten in her official capacity as Minnesota Field Office Director of USCIS. The Court refers to them collectively as "Defendants" and identifies USCIS specifically when relevant.

honorable conditions," nor "under *other than* honorable conditions." In doing so, Defendants place the burden to prove statutory meaning on Alam.

Defendants' motion to dismiss is denied because the Court finds Defendants' interpretation of Section 1440 unavailing. First, the plain language of Section 1440 contemplates only two categories of discharge. Second, USCIS must consider military instructions in its analysis: Section 1440 makes characterization of discharge the responsibility of the military, not USCIS. The Court also declines to place the burden of proving statutory meaning on Alam because statutory interpretation is a question of law.

## BACKGROUND

MAVNI offers non-citizens with critical-language skills or specialized medical training an expedited path to citizenship if they enlist and serve in the United States military during a period of ongoing hostilities. (Compl. ¶¶ 41–42.) MAVNI soldiers agree to serve the military as soon as they are able, and in the program's early history, soldiers attended basic training shortly after enlistment. (*Id.* ¶¶ 42–43); *Samma v. U.S. Dep't of Def.*, 486 F. Supp. 3d 240, 245 (D.D.C. 2020). In the past decade, the military and USCIS have added new requirements for MAVNI applicants, delaying their citizenship applications. (Compl. ¶¶ 43, 45); *Samma*, 486 F. Supp. 3d at 255–58.

I.     **Alam's Military Service and Naturalization Application**[3]

Alam came to the United States from Bangladesh on an F-1 student visa in January 2014. (Compl. ¶ 40.) He studied computer science at Winona State University in Minnesota and graduated in May 2017. (*Id.*) In 2016, while he was still a student, he enlisted in the Army. (*Id.* ¶¶ 40, 44.) Alam served in an Army Reserve unit for over two years. (*Id.* ¶ 45.)

*Naturalization Application.* During his service, Alam applied for naturalization. (*Id.* ¶ 46.) He included the required Form N-426, which a military official completed. (*Id.*) The Form N-426 asks the official to check a box—either yes or no—to reflect whether the "character of [the soldier's] service" was "honorable." (ECF No. 1-1 ("N-426") at 3.) USCIS uses this form and the Form DD-214 (described below) to determine whether an applicant is eligible for naturalization. (*E.g.*, ECF No. 1-11 ("Miriyeva Admin. Decision") at 3; ECF Nos. 1-3, 1-4.) Alam's N-426 certified that his military service was "honorable" as of January 2018. (Compl. ¶ 46; ECF No. 1-1 at 3.)

While awaiting a USCIS determination about his naturalization application, Alam completed and passed the Military Service Suitability Determination ("MSSD") and other

---

[3] The Court draws the background from the Complaint, accepting its factual allegations as true and drawing all reasonable inferences in the Alam's favor. *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014).

requirements of MAVNI. (*Id.* ¶¶ 45, 47.) He began active-duty training in June 2018. (*Id.* ¶ 49.)

*Discharge.* In July, the Army discharged Alam for "failed medical/physical/procurement standards." (*Id.* ¶ 51.) At discharge, the military completed a Form DD-214, titled "Certificate of Release or Discharge from Active Duty." (*Id.*; ECF No. 1-2 ("DD-214").) Among other things, the DD-214 requires the official completing it to state the "reason for separation" and the "character of [the soldier's] service." (Compl. ¶¶ 52–54; DD-214.) The Army designated Alam's service as "uncharacterized." (Compl. ¶¶ 52–54; DD-214.) Alam received no other notice or process. (*See* Compl. ¶ 114 ("[Alam] was never given the required notice and process for any lesser type of discharge.").)

The DD-214 is completed for internal military purposes, not for USCIS. (*See generally* ECF No. 1-13 (describing the process for completing a DD-214 and uses of the form).) The DD-214 lists six categories of discharge,[4] and Department of Defense instructions reference three broad discharge types: "honorable," "general (under honorable conditions)," and "under other than honorable conditions." (DoDI 1332.14

---

[4] The DD-214 lists: (1) honorable; (2) "under honorable conditions (general)"; (3) "under other than honorable conditions"; (4) bad conduct; (5) dishonorable; and (6) uncharacterized. (ECF No. 31-1 ("DoDI 1336.01") at 11–12.)

Enclosure 4 § (3)(b)(2)[5].) For a soldier to receive an "under other than honorable conditions" discharge, the soldier must have "been afforded the opportunity to request an administrative board action." (*Id.* § (3)(b)(2)(c)(2).) In limited circumstances, including separation while a soldier is in entry-level status, the military does not characterize a soldier's discharge and instead lists the discharge type as "uncharacterized." (*Id.* § (3)(b)(3)(c)(1).) According to DoD instructions, when an "administrative matter" requires a characterization of "honorable or general" to make the soldier eligible for military benefits, an uncharacterized, entry-level discharge should be "treated as the required characterization." (*Id.* § (3)(b)(3)(c)(1)(c).) In other words, although an "uncharacterized" discharge is distinct from an honorable or general discharge, the military treats it as honorable or general so that the soldier becomes eligible for military benefits.

*Alam's Application for Naturalization is Denied.* In December, USCIS interviewed Alam for his naturalization application. (Compl. ¶ 56.) The interviewing officer told Alam that his application was recommended for approval. (*Id.* ¶ 58; ECF No. 1-3.) But USCIS later denied Alam's application because "[his] DD form 214 . . . reflects that [he] received an uncharacterized discharge from the U.S. [military]." (Compl. ¶¶ 59–60; ECF No. 1-4.)

---

[5] The relevant portion of DoDI 1332.14 is available at ECF No. 1-16.

Alam filed an administrative appeal in March 2019. (Compl. ¶ 66.) USCIS requested a new N-426. (*Id.* ¶ 68.) While the old N-426, completed while Alam was still in the Army, listed his *service* as "honorable," the new N-426 reflected his *discharge* status. (*Id.* ¶¶ 46, 70–71.) Different from either the DoD instructions (listing three categories of discharge) or the DD-214 (listing six categories of discharge), the N-426 allows for two categories of discharge: "Honorable" or "Other." (ECF No. 1-8 at 4 (Part 6).) Alam's new N-426 lists his discharge type as "Other." In the "Remarks" section, the form specifies that he received an "uncharacterized" discharge and a "favorable" MSSD. (Compl. ¶ 71; ECF No. 1-8 at 5 (Part 7).)

USCIS affirmed its denial of Alam's naturalization application, citing Section 1440. (ECF No. 1-9 at 3.) It reiterated that it considered Alam ineligible for naturalization because he did not show he was discharged from the Army "under honorable conditions." (*Id.* at 2.) In its decision, USCIS explained that it does not consider "uncharacterized" as "under honorable conditions." (*Id.* at 3; Compl. ¶ 74.)

## II.    Previous Litigation over MAVNI

Alam is not the first soldier to challenge the implementation of MAVNI. A brief history of MAVNI jurisprudence provides helpful context for understanding this suit.

In *Nio v. United States Department of Homeland Security*, MAVNI applicants challenged a Department of Homeland Security requirement that they pass MSSD

background checks before they could be naturalized. 385 F. Supp. 3d 44, 62 (D.D.C. 2019). The District of Columbia district court found that requiring an MSSD determination before an applicant could be naturalized was arbitrary and capricious because USCIS bears an independent responsibility to investigate applicants. *Id.* at 67–68. The court noted that a soldier must receive a favorable MSSD to receive an "honorable" or "general under honorable conditions" discharge type; thus, the MSSD requirement merely reiterated Section 1440's honorable service requirement.[6] *Id.* at 68. The court also found that USCIS's requirement that an applicant obtain a favorable MSSD was arbitrary and capricious because USCIS's "justifications for the MSSD Requirement are [] belied by the fact that USCIS learns no new information about naturalization applicants" from the MSSD. *Id.* So the court vacated the requirement that an applicant obtain a favorable MSSD before naturalization and required USCIS to rely on its own investigation. *Id.* at 69.

In the related case *Kirwa v. United States Department of Defense*, MAVNI applicants challenged a Department of Defense policy that prevented them from receiving an N-426 until they started active duty (which they could not do until they passed an MSSD background check). 285 F. Supp. 3d 21, 25 (D.D.C. 2017). The *Kirwa* court granted the plaintiff's motion for a preliminary injunction because it found that the military's change

---

[6] The *Nio* court did not consider whether this requirement follows Section 1440, which is the section this Court must interpret.

in policy to require a background check before a soldier could receive an N-426 was likely arbitrary. *Id.* at 38, 44.

Then, in *Samma*, MAVNI applicants challenged a new barrier: a requirement that they complete 180 days of active-duty service to receive an N-426. 486 F. Supp. 3d at 245, 253. The court reviewed the legislative history of Section 1440 and determined that Congress intended no minimum time-in-service requirement. *Id.* at 265–68. The court rejected the new time-in-service requirement as arbitrary and capricious, even though the requirement "align[ed with] DoD's honorable service characterizations."[7] *Id.* at 267 (citing DoD's motion). The court explained that "a fuller military record may be necessary to determine whether someone is suitable to serve in the military, [but the DoD has] not explained why it is necessary for eligibility to naturalize." *Id.* at 273. And the court found that the time-in-service requirement conflicted with the statutory role for DoD "to certify[] an enlistee's honorable service" because it intruded into USCIS's delegated authority to naturalize persons. *Id.* at 275.

Most recent and most relevant is the District of Columbia Circuit Court's decision in *Miriyeva v. USCIS*, 9 F.4th 935, 937 (D.C. Cir. 2021). The court there considered a challenge to the same policy Alam challenges here—the USCIS position that

---

[7] The time-in-service requirement aligned with DoD characterizations because a soldier discharged within 180 days of starting active duty would receive an uncharacterized discharge and thus would be ineligible for naturalization under USCIS guidance.

"uncharacterized" separation does not meet the "separated under honorable conditions" requirement of Section 1440(a). *Id.* at 938. The court ruled that Miriyeva's claims are the kind Congress intended to be reviewed within the structure of INA Sections 1421(c), 1446, and 1447, and so Miriyeva could not bring her Administrative Procedure Act ("APA") challenges outside that scheme. *Id.* at 943. In short, rather than challenge the policy directly, Miriyeva and other applicants must individually challenge the decision by an immigration officer to deny their naturalization application. *Id.* at 940 (describing the statutory scheme).

That path, ending with *Miriyeva*, leads Alam to bring this individual challenge to the USCIS decision that he is ineligible to naturalize under Section 1440 because the military classified his discharge as "uncharacterized." He challenges the decision on three grounds: (1) as a violation of the INA; (2) as arbitrary and capricious in violation of the APA; and (3) as unconstitutional in contravention of the uniform rule of naturalization. (Compl. ¶¶ 133–64.) He also brings claims for injunctive and declaratory relief. (*Id.* ¶¶ 165–76.) The Court now considers Defendants' motion to dismiss.

## ANALYSIS

### I.     Count I: INA Claims

Count 1 of the Complaint is under the INA: it challenges the USCIS decision to deny Alam's naturalization application. (Compl. ¶¶ 133–35.) The Court has jurisdiction

over this claim. "A person whose application for naturalization . . . is denied, after a hearing before an immigration officer . . . may seek review of such denial before the United States district court. . . . Such review shall be de novo." 8 U.S.C. § 1421(c). The parties agree that Alam's application was denied after he exhausted his administrative remedies, so the Court reviews the USCIS decision *de novo*.

### A.      Burden of Proof

The Court must clear one matter away first: who bears the burden of proof in this case. Defendants ask the Court to place the burden to prove statutory meaning on Alam based on a misplaced interpretation of case law. In *Berenyi v. District Director, Immigration and Naturalization Services*, the Supreme Court explained that when immigrants seek citizenship, they bear the burden of showing their eligibility. 385 U.S. 630, 637 (1967). The *Berenyi* court differentiated removal proceedings—in which the government bears the burden—from naturalization proceedings, in which the petitioner does. *Id.* at 636–37. Defendants would apply this rule to statutory interpretation, which would require Alam to bear the burden of showing "under honorable conditions" has the meaning he ascribes. According to Defendants, "doubts should be resolved in favor of the United States and against the claimant." (ECF No. 18 ("Defs' Br.") at 11.)

*Berenyi* concerned the credibility of a witness and not statutory interpretation. 385 U.S. at 633–34, 636–37. In *Khalid v. Sessions*, the Second Circuit held that *Berenyi* does not

11

apply to statutory interpretation. 904 F.3d 129, 138–39 (2d Cir. 2018); *see also Al-Saadoon v. Lynch*, 816 F.3d 1012, 1014 (8th Cir. 2016) (placing the burden on petitioners to show they met the *statutory requirements* for naturalization). The Court can dispense with Defendants' arguments quickly under this case law. The statutory-interpretation burden lies with the Court, not Alam.[8]

### B.    *Requirements of Section 1440*

To qualify for naturalization under Section 1440, an applicant must have:

> served honorably as a member of the Selected Reserve of the Ready Reserve or in an active-duty status in the military, . . . of the United States . . . during [a] period which the President by Executive order shall designate as a period . . . involving armed conflict with a hostile foreign force, . . . if separated from such service, was separated under honorable conditions . . . [and] at the time of enlistment . . . [was] in the United States.

8 U.S.C. § 1440. Breaking this down, there are six requirements under Section 1440. Applicants must: (1) be non-citizens; (2) who served in the military; (3) honorably; (4) during a period of armed conflict; (5) having been physically present in the United States when they enlisted; and (6) having been separated from the military under honorable conditions. *Id.*

---

[8] In *Kulkarni v. Wolf,* 503 F. Supp. 3d 908 (W.D. Mo. 2020), the district court applied the *Berenyi* presumption to statutory interpretation, stating, "it has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect." *Id.* at 916. But the *Kulkarni* court apparently did not consider *Khalid*, in which the Second Circuit held the opposite. 904 F.3d at 138–39. This Court finds the *Khalid* court's reasoning persuasive.

12

Section 1440 also explains that "[t]he executive department under which such person served *shall determine* whether persons have served honorably in an active-duty status, and *whether separation from such service was under honorable conditions*." 8 U.S.C. § 1440(a) (emphasis added). In addition, "service in the military . . . *shall* be proved by a duly authenticated certification from the executive department under which the applicant served or is serving, which *shall state* whether the applicant served honorably . . . and was *separated from such service under honorable conditions*." *Id.* § 1440(b)(3) (emphasis added). "Citizenship granted pursuant to this section may be revoked . . . if the person is separated from the [military] *under other than honorable conditions* before the person has served honorably for a period or periods aggregating five years." *Id.* § 1440(c) (emphasis added).

The Complaint makes clear, and Defendants do not dispute, that Alam meets the first five elements of Section 1440. Alam is a citizen of Bangladesh, served honorably in the United States military during a period of armed conflict,[9] and enlisted while physically present in the United States. (Compl. ¶¶ 2, 40–41, 44; Defs' Br. at 10.) The sole question here is whether Alam was "separated under honorable conditions" under Section 1440(a).

_____

[9] After the events of September 11, 2001, President Bush issued Executive Order 13269 which designated a period of armed conflict. (ECF No. 1-12 at 3.) This order remains in effect. (*Id.*)

### C.   *Separation Under Honorable Conditions*

Defendants' argument is a simple one: because neither form characterizing Alam's discharge describes his discharge as "honorable," Alam was not separated "under honorable conditions" and cannot be naturalized. Upon first reading, this argument is compelling; it seems to follow the language of Section 1440(a). Indeed, it has been accepted by more than one court. *E.g.*, *Kulkarni*, 503 F. Supp. 3d 908; *Oyebade v. Lee*, No. 1:09–cv–1054–LJM–TAB, 2010 WL 2927207 (S.D. Ind. July 21, 2010). But this Court finds two significant problems with Defendants' position: (1) it deviates from the plain language of Section 1440; and (2) it relies on USCIS's interpretation of "under honorable conditions" when the statute requires the military—not USCIS—make that determination.

### i.   *Statutory Interpretation*

To accept Defendants' argument, the Court must conclude that the statute contemplates a neutral third category of discharge that would lead to a denial of naturalization. It cannot. Section 1440 contemplates only two discharge categories.

*Plain language.* "The first question in interpreting a statute is whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *United States v. Kowal,* 527 F.3d 741, 746 (8th Cir. 2008) (quotation marks and citation omitted). When interpreting the plain text of a statute, courts consider the

14

construction of the statute as a whole and may consult dictionary definitions. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341–42 (1997).

Section 1440 requires a discharge "under honorable conditions."[10] If the statute used only this phrase, this case might end differently, because the statute would leave room for several classifications falling outside the box of "under honorable conditions."

But the statute does not stop there. In Section 1440(c), Congress provided for revocation of citizenship for soldiers naturalized under Section 1440 if they were discharged under "*other than* honorable conditions." It is the use of *other than* that shows Congress contemplated only two categories of discharge in Section 1440. Under the plain language of Section 1440, a discharge classification must be one of two things: "under honorable conditions" or under "other than honorable conditions."

*Context.* Consider the peacetime equivalent to Section 1440: 8 U.S.C. Section 1439. Section 1439(a) requires peacetime soldiers applying for naturalization be separated "under honorable conditions," just like Section 1440.[11] Also, like Section 1440, Section

---

[10] This case does not concern the meaning of the word "honorable" by itself. The term "honorable" is not ambiguous—it has clear meaning. *See* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts*, 31–33 (2012) (explaining that ambiguous statutes have more than one possible meaning).

[11] Section 1439(a) requires specifically that an applicant "was never separated except under honorable conditions," while Section 1440 requires that an applicant "was separated under honorable conditions." The Court views these two requirements the same.

1439 requires that the military certify the soldier's discharge type. But there is one notable difference. Unlike Section 1440, Section 1439 requires that the military certify that the applicant never received an "*other than* honorable" discharge. *Compare* 8 U.S.C. § 1439(b)(3) ("[T]he applicant shall furnish to the Secretary of Homeland Security. . . a certified statement from the proper executive department . . . clearly showing that . . . no discharges from service . . . were other than honorable."), *with* 8 U.S.C. § 1440 (b)(3) (stating that for an applicant under this section "service in the military . . . shall be proved by a duly authenticated certification from the executive department . . . which shall state whether the applicant . . . was separated from such service under honorable conditions"). The requirement of Section 1439(a) that a soldier was separated "under honorable conditions" combined with Section 1439(b)(3)'s requirement that a soldier was never discharged under "other than honorable" conditions shows that, for the peacetime statute, there are also only two options: discharge "under honorable conditions" or "under other than honorable conditions."

It makes no sense that "under honorable conditions" would have a different meaning in Section 1440 than Section 1439. "When interpreting a statute [courts] must . . . consider the statutory context in which the words in question appear, . . . including . . . the broader context of the statute as a whole." *Designworks Homes, Inc. v. Columbia House of Brokers Realty, Inc.*, 9 F.4th 803, 807 (8th Cir. 2021) (citing *Robinson v. Shell*, 519 U.S. at

16

341) (quotation marks omitted). Under "normal rule[s] of statutory construction . . . identical words used in different parts of the same act are intended to have the same meaning." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995). Congress used the same requirement for Sections 1439 and 1440; a soldier must have been discharged "under honorable conditions" to be eligible for naturalization. 8 U.S.C. §§ 1439(a), 1440(a). And Section 1439 contemplates only two discharge categories, so the same possibilities apply to Section 1440. The statute leaves no room for the third category of "uncharacterized" discharges that Defendants propose.

Defendants argue that an uncharacterized discharge—a facially neutral term—does not mean "other than honorable conditions" under Section 1440. Yet they also say that it *does* mean something other than "under honorable conditions" for the military official who is determining discharge type.[12] (*See* ECF No. 31-2 at 6; Defs' Br. at 9.) This construction is painful at best, requiring linguistic contortions Congress did not intend. Congress unambiguously contemplated only two categories of discharge in Section 1440: "under honorable conditions" and "under other than honorable conditions."

---

[12] To support its strained conclusion, Defendants seem to rely on *Berenyi* and put the burden on the immigrant to show entitlement to naturalization. (Defs' Br. at 11 (citing *Berenyi*, 385 U.S. 630) (placing burden on plaintiff).) But as noted above, this question is one of statutory interpretation, so this Court will not apply *Berenyi*.

ii.      *Interpreting Discharge and Immigration Forms*

Because Section 1440 contemplates only two categories of discharge, Alam's "uncharacterized" discharge must fit into one of the two. Defendants agree that an uncharacterized discharge is not "other than honorable" as defined by the military.[13] (ECF No. 31-2 at 6 ("[A]n other-than-honorable discharge and an uncharacterized discharge are not the same thing at all.").) Yet Defendants also assert that they cannot find Alam's discharge "under honorable conditions" because the discharge box on Alam's N-426 was checked "other." (Defs' Br. at 12.)

Defendants' interpretation of the N-426 is that anyone whose discharge box is checked "honorable" falls within the "under honorable conditions" category of Section 1440.[14] (*Id.*) Thus, conversely, anyone whose discharge box is checked "other"

---

[13] A discharge "under other than honorable conditions" is warranted "[w]hen the reason for separation is based on a pattern of behavior that constitutes a significant departure from the conduct expected of soldiers," or "[w]hen the reason for separation is based on one or more acts or omissions that constitute a significant departure from the conduct expected of" soldiers. (DoDI 1332.14 Enclosure 4 § (3)(b)(2)(c)(1).)

[14] Although Defendants argue in this case the N-426 box is dispositive, it may not have made a difference had the box been checked as "honorable." Another soldier applying for naturalization, Miriyeva, submitted an N-426 that listed his discharge type as "honorable." (ECF No. 1-10 at 4; Miriyeva Admin. Decision.) USCIS looked beyond the N-426 to the DD-214 and determined that the "most recently certified Form N-426 does not overcome the 'uncharacterized' designation on [the] DD Form 214 because, per DoDI 1336.01," the DD-214, and not the N-426, is the authoritative source for discharge type. (Miriyeva Admin. Decision at 3.) Apparently USCIS thinks that sometimes the N-426

falls outside the category of "under honorable conditions" and is not eligible for naturalization. (*Id.*) But neither the DD-214 nor the N-426 tracks the language of Section 1440(a), which requires the military to state whether the discharge was "under honorable conditions."

The DD-214 uses a fill-in-the-blank to designate "character of service," also called the "discharge characterization."[15] (DoDI 1336.01 at 11–12 (instructions for DD-214).) Nothing on the DD-214 clarifies how these six discharge types relate to Section 1440's requirement that a soldier's discharge be "under honorable conditions." And understandably so, because the DD-214 applies broadly, far beyond the immigration context. (*See id.* (stating that the DD-214 is "often used by civilian personnel" including for "employment placement and job counseling"); DoDI 1332.14 § 2 (explaining the DD-214 applies broadly to discharge classification).)

The N-426 also deviates from the two-category delegation of Section 1440 because it does not require the military to say whether the separation was "under honorable

---

checkbox is the military deciding whether a soldier was separated under honorable conditions as required by Section 1440 and sometimes it is meaningless.

[15] It is unclear how DD-214 relates to Section 1440. Section 1440 distinguishes honorable service from honorable discharge. 8 U.S.C. § 1440(a). As Alam's case makes evident, a soldier can serve honorably while still receiving another discharge type, so character of service and discharge characterization are not coextensive.

conditions." Instead, it asks the military official completing the form to check a box for "honorable" or "other" to characterize "discharge type."[16] (ECF No. 1-1 at 4.) To the military, "honorable" and "under honorable conditions" mean different things.[17] Neither form requests what Section 1440 requires: a statement from the military about whether the soldier's discharge was "under honorable conditions" or not. Thus, USCIS cannot rely

---

[16] The USCIS Policy Manual explains that two discharge types, "Honorable" and "General-Under Honorable Conditions" qualify as honorable for immigration purposes, while others do not. (ECF No. 1-12 at 3.) The Court does not consider the USCIS Policy Manual's interpretation because Congress did not task USCIS with determining whether a soldier's discharge was under honorable conditions; it tasked USCIS with granting a soldier citizenship if the *military* described a soldier's discharge as under honorable conditions. 8 U.S.C. § 1440(a).

Moreover, the USCIS Policy Manual does not follow the requirements of Section 1440. Section A of the manual posits that the statute requires "honorable service" but fails to include the requirement that a soldier must have been discharged under honorable conditions. (ECF No. 1-12 at 2.) And Section B conflates "honorable service" with discharge "under honorable conditions" even though they are distinct requirements in Section 1440. (*Id.* at 3.)

[17] An "honorable" discharge characterization is reserved for soldiers whose "service generally has met the standards of acceptable conduct and performance of duty for military personnel or is otherwise so meritorious that any other characterization would be clearly inappropriate." (DoDI 1332.14 Enclosure 4 § (3)(b)(2)(a).) A soldier may also receive a "General (Under Honorable Conditions)" discharge if their "service has been honest and faithful . . . [and] the positive aspects of the enlisted Service member's conduct or performance of the duty outweigh negative aspects of the enlisted Service member's conduct or performance of duty." (*Id.* § (3)(b)(2)(b).)

on either form to determine whether Alam's "uncharacterized" discharge was "under honorable conditions."

iii.        Military Meaning of "Uncharacterized"

Under this framework, the question is what the military meant when it determined that Alam's discharge was "uncharacterized."[18] The Court concludes that Alam alleges sufficient facts to show that an "uncharacterized" discharge is one treated by the military as "under honorable conditions." As noted above, DoD instructions treat an "uncharacterized" discharge as "under honorable conditions" when "administrative matters outside this instruction . . . require [such a] characterization."[19] (DoDI 1332.14

---

[18] Defendants assert that the military necessarily determined that an "uncharacterized" discharge was not "under honorable conditions" because military regulations allow for an "honorable" entry-level separation in limited circumstances. (Defs' Br. at 12–13.) But just because the military can characterize an entry level discharge as "honorable" within the six-option framework within DD-214 does not mean that the other categories fail the statutory test. It merely means that Alam's discharge was not "honorable," which, again, is different from "under honorable conditions."

[19] Defendants and the *Kulkarni* court believe DoD instructions have no place in determining the proper characterization under Section 1440 because USCIS should not look to military guidelines. (Defs' Br. at 23); *Kulkarni*, 503 F. Supp. 3d at 918. By its own terms, DoDI 1332.14 applies to administrative separation proceedings within the DoD. (DoDI 1332.14 § 2(a)–(b).) And, as discussed, DoDI 1332.14 Enclosure 4 § (3)(b)(3)(c)(1)(c) also applies to matters outside the instruction. Filling out an N-426 is an administrative matter conducted by military official, so this Court finds that DoDI 1332.14 applies.

In fact, USCIS has looked to DoD instructions in other matters. In Miriyeva's administrative decision, USCIS cited DoDI 1336.01, which has a similar applicability statement, when considering a conflict between the N-426 and DD-214. (Miriyeva Admin.

21

Enclosure 4 § (3)(b)(3)(c)(1)(c).) As this DoD instruction makes clear, a soldier who receives an uncharacterized discharge should be treated as having received a discharge "under honorable conditions" when administrative processes require it. The completion of an N-426 may be exactly that kind of administrative process, requiring a characterization of "under honorable conditions" or not. Thus, Alam has stated a claim for relief.

The Court stops short of determining the ultimate outcome because this is Defendants' motion to dismiss. The parties may raise any factual disputes in later litigation—including any facts which suggest the military's meaning of "uncharacterized" is more complex than DoDI 1332.14 suggests—and the Court will determine Alam's eligibility, based on the facts and the law, on a motion for summary judgment or at a trial. *See, e.g.*, *Abdi v. U.S. Citizenship & Immigr. Servs.*, 923 F. Supp. 2d 1160, 1167 (D. Minn. 2013) (ruling on Section 1421(c) claim on a motion for summary judgment).

---

Decision at 3.) USCIS cannot decide to apply DoD instructions only when it suits its analysis. USCIS should look to DoDI 1334.14 to determine what "uncharacterized" means, as it looked to DoDI 1336.01 in assessing the import of DD-214.

D.      *Other Considerations*

Though the Court denies the motion to dismiss on Count I based on the plain

language of the statute, it is worth noting other considerations that support this outcome.

*Due process.* Alam has a due process interest in his discharge classification. *See May*

*v. Gray*, 708 F. Supp. 716, 722–23 (E.D.N.C. 1988) (finding stigmatic injury can occur even

from a general discharge under honorable conditions (rather than an honorable

discharge)); *see also Casey v. United States*, 8 Cl. Ct. 234, 243 (Cl. Ct. 1985) ("[D]ischarges

that include stigmatizing and derogatory information must only be given to servicemen

who have been afforded elementary due process rights."). Before receiving a separation

under "other than honorable conditions" a soldier must be "afforded the opportunity to

request an administrative board action." (DoDI 1332.14 Enclosure 4 § (3)(b)(2)(c)(2); ECF

No. 31-2 at 5–6); *see Holley v. United States*, 124 F.3d 1462, 1470 (Fed. Cir. 1997) ("[A]s a

probationary officer Mr. Holley had no statutory or regulatory right to a hearing unless

the discharge was on other than honorable conditions.").

As discussed, Section 1440 offers only two possible discharge categories: under

honorable conditions or under other than honorable conditions. To discharge Alam

under other than honorable conditions, the military needed to afford him due process.

(DoDI 1332.14 Enclosure 4 § (3)(b)(2)(c)(2).) But Alam did not receive due process, and so

if he is treated as discharged under other than honorable conditions, the military deprived him of his due process rights.

*Time-in-service requirement.* As the District of Columbia district court explained in *Samma*, Congress amended Section 1440 several times to remove any time-in-service requirement. 486 F. Supp. 3d at 266. First, in 1968, Congress amended Section 1440 "to provide for expeditious naturalization." *Id.* at 266 (citing S. Rep. No. 90-1292, at 2 (1968)). As the Senate Judiciary Committee Report on the amendment explains, under Section 1440, "an alien or noncitizen national who has served honorably . . . may be naturalized . . . *without regard to . . . a waiting period*." *Id.* (emphasis in original). Then, in 2003, Congress broadened the group of non-citizen service members who were eligible for expeditious naturalization, including by extending Section 1440's benefits to any soldier "serv[ing] honorably as a member of the Selected Reserve of the Ready Reserve *or* in an active-duty status." *Id.* (quoting § 1440).

Yet every soldier who is injured or fails a medical exam while in basic training receives an uncharacterized discharge. *See Nio*, 385 F. Supp. 3d at 64 ("By default, any entry-level[20] discharge of a MAVNI reservist is labeled as 'uncharacterized.'"). If every soldier who does not complete basic training receives an uncharacterized discharge, then

---

[20] A soldier is generally in entry-level status for the first 180 days of active-duty service. (Compl. ¶ 34; ECF No. 1-9 at 4.)

every soldier must complete a minimum time-in-service: the time to complete basic training. *See id.* at 51 (specifying that basic training lasts about ten weeks). So reading "uncharacterized" as not "under honorable conditions" reads a *de facto* time-in-service requirement, which contradicts the plain language of Section 1440 and Congress's intent.

*Policy.* Finally, Defendants argue that as a matter of policy, Congress could not have intended to "extend the high privilege of citizenship to unsuitable military recruits who remain in the military for a minimal length of time." (Defs' Br. at 21.) This may be so if Congress's purpose in enacting Section 1440 was exclusively to reward service. *See Tak Shan Fong v. United States*, 359 U.S. 102, 107 (1959) (describing the implicit purpose of the legislation as being "to express the gratitude of the country toward aliens who render service"). But there is another possible purpose of Section 1440: to recruit new enlistees. *See Tiwari v. Mattis*, 363 F. Supp. 3d 1154, 1157 (W.D. Wash. 2019) ("[MAVNI] program . . . was implemented . . . to address difficulties the DoD had experienced in recruiting individuals with either proficiency in critical foreign languages or specialized healthcare training."). And if Section 1440 and MAVNI were intended to recruit new enlistees, Congress may well have intended to grant citizenship even to enlistees who did not serve in active duty.

Moreover, when courts consider challenges to military action, "judicial deference is at its apogee." *Richenberg v. Perry*, 97 F.3d 256, 261 (8th Cir. 1996) (upholding the

military's "Don't ask, Don't tell" policy) (cleaned up). On a practical level, deference to military authorities is appropriate because "it is difficult to conceive of an area of governmental activity in which the courts have less competence." *Id.* (citations omitted). "The complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments." *Id.* (citations omitted). The military should receive substantial deference when it characterizes a soldier's discharge status because determining discharge type is a professional decision that reflects the military's decisions about how to operate.

### E.   *Related Cases*

Two other district courts have considered this issue and ruled that "uncharacterized" discharges are not "under honorable conditions." The arguments raised in those cases were different, as described below.

*Oyebade.* Oyebade enlisted in the Navy in 2007 and began active duty just a few months later. *Oyebade,* 2010 WL 2927207, at *1. While serving on active duty he was diagnosed with a mental health condition, so the Navy discharged him. *Id.* at *1. Because he was discharged just over a month after starting active duty, his DD-214 characterized his service as "Uncharacterized (Entry Level Separation)." *Id.* USCIS denied Oyebade's application for naturalization for the same reason as Alam's—"[s]ince the determining

executive department under which [he] served did not deem [his] service as honorable, [he was] not eligible for naturalization."[21] *Id*. (quotation and citation omitted).

Oyebade sued, seeking a review of this decision. *Id*. Like Alam, Oyebade argued that his uncharacterized discharge satisfies the "under honorable conditions" requirement of Section 1440 because it was not "other than honorable." *Id*. at 4. The court found that "Oyebade's proposed interpretation . . . stretches the term 'honorable' beyond its ordinary meaning, and well beyond the meaning employed by the Navy." *Id*.

In doing so, the *Oyebade* court received neither the N-426 nor DoD instructions. The *Oyebade* court also did not consider the meaning of "under honorable conditions"— instead considering only the meaning of "honorable."

*Kulkarni*. As with *Oyebade*, Kulkarni challenged the same USCIS interpretation as Alam. *Kulkarni*, 503 F. Supp. 3d 908. The *Kulkarni* court placed the burden on Kulkarni to show eligibility for naturalization. *Id*. at 915. After placing the burden on Kulkarni, the court explained that, "[w]ithout question, the Armed Services elected not to certify [Kulkarni's] separation as 'under honorable conditions'" and so "[Kulkarni] did not meet her burden." *Id*. at 916.

---

[21] Note, too, that this conflates Section 1440's honorable service requirement with the requirement that a discharge be "under honorable conditions."

As discussed, this Court agrees with *Kulkarni* that the applicant bears the burden to show *factual* eligibility for naturalization. But this case presents a purely legal question, so the Court applies no such burden. This Court also agrees with the *Kulkarni* court that the military did not certify Kulkarni's discharge (nor Alam's discharge) as "under honorable conditions" on the N-426. But unlike in *Kulkarni*, this Court finds that the military's certification of an "uncharacterized" discharge may mean "under honorable conditions" to the military because of DoD instructions. Only by considering the *military's* meaning of uncharacterized can the Court ensure, as the *Kulkarni* court tried to, that "USCIS [has] no role in the military's certification." *Id.* at 918. Any other outcome relies on USCIS's meaning of honorable and not the military's, which Section 1440 expressly prohibits.

## II.      Counts II and IV: APA claim and Declaratory Judgment

Alam seeks an order setting aside the USCIS policy of treating soldiers who receive "uncharacterized" discharges as ineligible for naturalization in violation of the APA. (Compl. ¶¶ 151, 169.) And Alam seeks a declaration that "uncharacterized" satisfies the "under honorable conditions" discharge requirement under Section 1440. (*Id.* ¶ 169.) The Court lacks subject matter jurisdiction over these claims.

Section 1421(c) is the only means for judicial review under the INA. *Miriyeva*, 9 F.4th at 945. Because Section 1421(c) describes a single act—denial of a naturalization

application—it applies only to review of individual applications. *See Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 56 (1993) (discussing jurisdiction in the context of a different INA review provision); *see also Miller v. McAleenan*, No. 4:19-CV-00043-DGK, 2019 WL 2411440, at *2 (W.D. Mo. June 7, 2019) ("Any relief provided to the petitioner under § 1421(c) is an instruction to the agency to naturalize the petitioner.") (citing *Zayed v. United States*, 368 F.3d 902, 906 (6th Cir. 2004)). So the Court may only grant relief to the individual applicant and lacks jurisdiction over claims that seek relief beyond the individual applicant—including Alam's claims seeking relief under the APA and seeking declaratory judgment. *See Ajlani v. Chertoff*, 545 F.3d 229, 239 (2d Cir. 2008) (citing other circuits).

The APA's provision authorizing judicial review of final agency actions "for which there is *no other adequate remedy in a court*" does not give this Court jurisdiction over Alam's APA claim. 5 U.S.C. § 704 (emphasis added). Admittedly, a remedy under the APA would be broader than Alam's remedy should he succeed on his Section 1421(c) challenge; a general order setting aside the USCIS policy would extend relief beyond Alam to other soldiers. But other soldiers facing the same plight may challenge this policy on an individual basis and may cite this decision on their applications. *See De Dandrade v. U.S. Dep't of Homeland Sec.*, 367 F. Supp. 3d 174, 186 (S.D.N.Y. 2019) (citing *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 497 (1991)) (finding plaintiffs could not bring

29

separate APA challenge because judicial review provision of § 1421(c) was an adequate remedy, even if each applicant had to apply for relief individually), *aff'd sub nom. Moya v. U.S. Dep't of Homeland Sec.*, 975 F.3d 120 (2d Cir. 2020).

Section 1421(c) provides an adequate remedy for Alam and other soldiers, so the Court lacks subject matter jurisdiction over the APA claim. *Miriyeva*, 9 F.4th at 945; *De Dandrade*, 367 F. Supp. 3d at 186 (finding APA challenge can be brought under § 1421(c)). The Court dismisses Alam's APA and declaratory judgment claims. Fed. R. Civ. P. 12(b)(1).

### III.      Count III: Constitutional Violations

At a hearing on the motion to dismiss, Alam did not oppose dismissal of Count III of the Complaint, which is for "Constitutional Violations." (Compl. ¶¶ 153–64.) So the Court dismisses Count III.

### IV.      Count V: Injunctive Relief

Count V purports to be a claim for injunctive relief. As Alam acknowledges, no such cause of action exists. (ECF No. 30 at 33 n.33); *see Miriyeva v. USCIS*, 436 F. Supp. 3d 170, 186 n.19 (D.D.C. 2019) ("It is really just 'a request that the Court grant a particular form of relief (an injunction) to redress the other claims plaintiffs assert.'"), *aff'd*, 9 F.4th at 94. Alam may seek injunctive relief as a remedy, but such relief is not a separate claim. Therefore, this claim must be dismissed under Rule 12(b)(6).

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT Defendants' Motion to Dismiss (ECF No. 16) is GRANTED IN PART and DENIED IN PART as follows:

1.  Count I of the Complaint remains pending;

2.  Counts II and IV of the Complaint are DISMISSED WITH PREJUDICE for lack of subject matter jurisdiction;

3.  Count III of the Complaint is DISMISSED WITHOUT PREJUDICE; and

4.  Count V of the Complaint is DISMISSED WITH PREJUDICE because injunctive relief is not an independent claim, though Alam may continue to seek injunctive relief.


Dated: March 21, 2022                     BY THE COURT:

                                          s/Nancy E. Brasel
                                          Nancy E. Brasel
                                          United States District Judge